UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

La'TANYA RHODES,

        Plaintiff,                       Civil Action No. 09-cv-14204

        v.                              District Judge Julian Abele Cook
                                        Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [35 ,39]**

Plaintiff La'Tanya Rhodes ("Plaintiff" or "Claimant") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties filed summary judgment motions, (Dkts. 35, 39, 42) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 4, 40).

**I. RECOMMENDATION**

For the reasons set forth below, this Court finds substantial evidence supports Administrative Law Judge ("ALJ") John Heyer's decision that Plaintiff did not have a severe impairment or combination of impairments on or before her date last insured ("DLI").  Moreover, this Court finds that the ALJ properly followed the mandates of 20 C.F.R. § 404.1529 and SSR 96-7p regarding Plaintiff's credibility.  Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED,

and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff alleges that she became unable to work on September 12, 1995. (Tr. 73.) Her date last insured is December 31, 1995. (Tr. 51, 122.) The Commissioner denied Plaintiff's disability application on August 26, 2006.[1] (Tr. 73.) Plaintiff then filed a request for a hearing, and on March 10, 2009, she appeared accompanied but not represented by counsel before ALJ Heyer, who considered the case *de novo*.[2] (Tr. 46.) In an April 8, 2009, decision, the ALJ found that Plaintiff was not disabled prior to December 31, 1995. (Tr. 70-77.) The ALJ's decision became the final decision of the Commissioner on August 19, 2009 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) Plaintiff filed this suit on October 26, 2009.

### B. Background

Plaintiff was 32 years old on the alleged disability onset date. (Tr.74.) She has a high school education and past relevant work as a telephone operator. (*Id.*) Plaintiff alleges that she became unable to work on September 12, 1995 due to a closed head injury with an acute scalp contusion. (Tr. 74, 76.)

---

[1] Plaintiff is receiving Supplemental Security Income benefits from another application that she filed in February of 1997. (Tr. 50.) She is currently seeking DIB benefits for her September 12, 1995 injury. (*Id.*)

[2] Plaintiff had an earlier hearing on January 23, 2008 before ALJ Paul R. Armstrong. (Tr. 46.) That hearing was closed for Plaintiff to secure legal counsel. (Tr. 45.)

*1. Plaintiff's Testimony*

At the hearing before the ALJ, Plaintiff testified that she has been receiving SSI Benefits since 1997. (Tr. 50.) She is currently seeking DIB benefits for an injury occurring on September 12, 1995.[3] (Tr. 50.)

The ALJ opened the questioning by asking Plaintiff about her previous work experience. (Tr. 51.) She stated that she last worked in 1997 as a collections agent for Mel Far Automotive. (Tr. 51.) Plaintiff denied owning and running her own coffee business. (Tr. 52.) Plaintiff stated that she worked for United Parcel Service in 1995. (*Id.*)

On September 12, 1995, Plaintiff suffered a closed head injury while working at UPS. (Tr. 51, 53.) Plaintiff was standing at a water fountain in an open stairwell, and a box someone was carrying collapsed. (Tr. 53.) "Steal prodigals" fell from the box and hit Plaintiff on the head. (*Id.*) Plaintiff testified that she was not able to stand as a result of the injury. (*Id.*) She also testified that she vomited as a result of the injury. (*Id.*)

*2. Relevant Medical Evidence*

The relevant medical evidence pertaining to an impairment before December 31, 1995 is very limited.

---

[3]In order to establish entitlement to social security disability insurance benefits, a claimant must establish that he became disabled prior to the expiration of his insured status. 42 U.S.C. § 423 (a), (c). In addition, "[p]ost-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured." *Price v. Chater*, 1996 U.S. App. LEXIS 34006, *5 (6th Cir. Nov. 27, 1996)(citing *King v. Sec'y of Health and Human Svcs*., 896 F.2d 204, 205-06 (6th Cir. 1990)). Plaintiff's date last insured is December 31, 1995. (Tr. 51, 122.) Therefore, the time period at issue in this case is very brief – September 12, 1995 through December 31, 1995. (Tr. 54-55.) Plaintiff must establish disability prior to December 31, 1995. (*Id.*)

3

The record indicates that Plaintiff went to the emergency room at St. Mary's Hospital in Livonia, Michigan on September 13, 1995. (Tr. 314.) She complained of a severe headache and vomiting. (*Id.*) She had a CAT scan that initially "showed a minimal suspicious area." (*Id.*) The doctors performed a follow-up CAT scan that was normal. (*Id.*) Dr. Al-Khaled suggested having an MRI to rule out any significant bleeding, but the Plaintiff refused: "[T]he patient had made up her mind despite the risks she might be taking, knowing that bleeding may be causing death, but she still decided to go ahead and leave the hospital." (*Id.*) Thus, the hospital discharged Plaintiff "against medical advice." (*Id.*)

The next day Plaintiff went to the emergency room at William Beaumont Hospital at the request of her employer. (Tr. 291.) She complained of a headache, blurred vision in the right eye and vomiting. (*Id.*) Dr. Steven J. Saginaw diagnosed Plaintiff with a possible postconcussive headache. (Tr. 292.) Plaintiff had another CAT scan that was negative. (*Id.*) Dr. Saginaw also suggested that Plaintiff get a "lumbar puncture" to rule out any internal bleeding. (*Id.*) The Plaintiff again refused. (*Id.*)

The record indicates that Plaintiff went to Beaumont Hospital again on September 19, 1995. (Tr. 283.) She complained of blurry vision, headache, dizziness and vomiting without relief since the injury. (*Id.*) Dr. Daniel S. Richardson attempted to evaluate Plaintiff. (*Id.*) Dr. Richardson reported that Plaintiff was very hostile and uncooperative:

> On my evaluation she was very hostile from the beginning when I walked in the room. She was uncooperative, would not answer any questions or was unable to answer the questions I asked her. She was awake and alert and oriented. I began to evaluate her . . . . I reached down to touch her head to flex her neck forward, when I touched her head she became very mad, she swung and hit me. She called me a "racist bastard," climbed out of the bed, said she was leaving, was not going to stay around here.

(Tr. 283.)

Another doctor at Beaumont attempted to evaluate Plaintiff, but she continued to be hostile and uncooperative:

> Dr. Cisek went back in to evaluate the patient further. He spoke with her, she called him a "red neck bastard." He tried to reason with her, discussed her case with her. He also felt that she was awake, alert and oriented and the patient left the ER. We again tried to talk with her. She was unwilling to cooperate. She threatened to call the police, as well as, knocked me down.

(*Id*.)

Lastly, Plaintiff saw Dr. Mary Forester at the Michigan Institute for Neurological Disorders on October 7, 1995. (Tr. 600.) Dr. Forester took an MRI of Plaintiff's cervical spine. (*Id*.) The record contains only one page from Dr. Forester. (*Id*.) This page indicates that Dr. Forester diagnosed Plaintiff with a "central disc protrusion at the level of C5/6 which may reflect cervical disc bulging although the possibility of central cervical disc herniation cannot be excluded." (*Id*.)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since September 12, 1995—Plaintiff's alleged onset date. (Tr. 74.) Specifically, the record reveals that Plaintiff worked from December of 1998 through August of 1999, earning $400 in 1998 and $2,876.85 in 1999. (Tr. 74, 122.) At step two, the ALJ found that Plaintiff had a closed head injury, with an acute scalp contusion. (Tr. 76.) However, this injury did not constitute a severe impairment that significantly limited Plaintiff's physical or mental ability to do basic work activities because, as stated above, Plaintiff worked after her alleged onset date. (Tr. 76.) Next, the ALJ concluded

that Plaintiff's impairment, alone or in combination, did not meet or medically equal a listed impairment. (Tr. 77.) Therefore, the ALJ concluded his analysis, and found Plaintiff not entitled to benefits. (*Id.*)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this

Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

*1. Substantial Evidence Supports the ALJ's Findings at Step Two*

Plaintiff claims that the ALJ erred at Step Two by finding that Plaintiff did not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). However, Plaintiff fails to acknowledge – or perhaps recognize – that she must establish disability on or before her date last insured – December 31, 1995. (Tr. 74; *compare* Dkt. 35, Pl.'s Mot. Summ. J. at 15-20; Dkt. 42, Pl.'s Resp. to Mot. Summ. J. at 4-6);42 U.S.C. § 423 (a), (c). Therefore, the relevant medical evidence is that evidence prior to December 31, 1995 or evidence that relates back to Plaintiff's medical condition prior to December 31, 1995. (Tr. 74.) *Price v. Chater*, 1996 U.S. App. LEXIS 34006, *5 (6th Cir. Nov. 27, 1996)(citing *King v. Sec'y of Health and Human Svcs.*, 896 F.2d 204, 205-06 (6th Cir. 1990))("Post-

expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.").

This evidence shows that Plaintiff suffered a closed head injury on September 12, 1995. (Tr. 314.) She went to the emergency room the next day complaining of a severe headache and vomiting. (*Id*.) She had a CAT scan initially that "showed a minimal suspicious area." (*Id*.) However, she had two follow-up CAT scans at two different hospitals that were normal. (*Id*.; Tr. 291.) Thereafter, Plaintiff refused a suggested MRI and/or lumbar puncture testing and left the two different hospitals against medical advice. (*Id*.) Indeed, at William Beaumont Hospital she was uncooperative and hostile. (Tr. 283.)

The last piece of evidence from the relevant time period is from Dr. Mary Forester. (Tr. 600.) This one page document indicates that Plaintiff had an MRI that showed a "central disc protrusion at the level of C5/6 which may reflect cervical disc bulging." (*Id*.) The record is then devoid of any other medical evidence until July 1998, when the Plaintiff visits another emergency room after an alleged assault.[4] (Tr. 241.)

This evidence does not establish that Plaintiff suffered from a severe impairment such as one of those listed in 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00. Examples of severe neurological impairments include: Epilepsy, brain tumors, Multiple Sclerosis, and Amyotrophic Lateral Sclerosis (ALS). *Id*. Plaintiff did not establish that she suffered from any of these impairments before

---

[4] Plaintiff submitted medical evidence from March 2, 1996 from McLaurin NeuroDiagnositcs, P.C. in her Response to Defendant's Motion for Summary Judgment. (Dkt. 42, Pl.'s Resp. to Mot. Summ. J. at 10-13.) This evidence was not before the ALJ, however, and will not be considered here. 42 U.S.C. § 405.

December 31, 1995.[5]  (Tr. 70-77.)  Plaintiff can also establish a severe neurological impairment "caused by cerebral trauma" via the regulations in section 12.02.  20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00(F). As relevant here, Listing 12.02 provides: "The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02.  Two state agency doctors reviewed Plaintiff's medical evidence both pre and post December 31, 1995, and determined that Plaintiff did not have a severe impairment that satisfied Part A of  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02 prior to December 31, 1995.  (Tr. 369-70; 587-88.)  In addition, both doctors determined that Plaintiff did not have any of the limitations under Part B or C.  (*Id*.)  They concluded that Plaintiff had an "acute" injury that resolved itself, and there was "insufficient medical evidence to establish a disabling condition prior to DLI." (*Id*.)  The ALJ's decision was consistent with this evidence and all the relevant medical evidence on the record.

Second, even if Plaintiff had a severe impairment, which she did not, Plaintiff's evidence did not establish that such an impairment was "expected to result in death" or "last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB).  Plaintiff's relevant medical evidence prior to the DLI consists of records from September 13, 1995 to October 7, 1995.  (Tr. 283, 291-92, 314, 600.)  This evidence shows an impairment lasting one month, at most, and is "insufficient" to establish a disability prior to DLI.

Third, as the ALJ noted, Plaintiff engaged in substantial employment from December of 1998 to August of 1998.  (Tr. 76.)  Therefore, even if she had a severe impairment, which, again,

---

[5]Plaintiff claims to be suffering from MS now.  (Tr. 55.)  However, her medical records submitted to the ALJ in this case do not support this diagnosis. (Tr. 235-633.)  Moreover, it is clear that she did not have MS prior to December 31, 1995.  (Tr. 283, 291-92, 314, 600.)

10

she did not, it did not limit her physical or mental ability to do basic work activities as required by the regulations. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). As such, substantial evidence supports the ALJ's finding that Plaintiff is not disabled under the Act.

*2. The ALJ Properly Evaluated Plaintiff's Testimony*

Plaintiff claims that the ALJ did not properly evaluate her "agitation, irritation, and uncooperative behavior" with regard to some of the doctors that treated her. (Dkt. 35, Pl's Mot. Summ. J. at ECF 2.) She claims this behavior actually corroborates her painful, debilitating injury. (*Id*.)

The ALJ is required to give specific reasons for his findings regarding an individual's credibility pursuant to SSR 96-7p:

> [T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding of credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." (citation omitted.)
>
> \* \* \*
>
> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Moreover, the Social Security Administration ("SSA") has guidelines regarding analyzing a Plaintiff's subjective complaints of pain. 20 C.F.R. § 404.1529; *see also Felisky v. Bowen*, 35 F.3d

11

1027 (6th Cir. 1994). Pursuant to the SSA regulations, the ALJ must analyze: 1) The Plaintiff's daily activities; 2) The location, duration, frequency and intensity of pain; 3) Precipitating and aggravating factors; 4) The type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, Plaintiff receives or received for relief of pain; and 6) Any measures Plaintiff uses or has used to relive pain. 20 C.F.R. § 404.1529(c)(2); *Felisky*, 35 F.3d, at 1039-40.

The ALJ gave very explicit reasons for discounting Plaintiff's testimony regarding her impairments and pain. (Tr. 76.) First, he noted that Plaintiff's assertions of pain continuously from 1995 through a 1999 cervical fusion were not supported by medical evidence. (*Id*.) Indeed, as the ALJ explained, Plaintiff's medical evidence "reveals no ongoing treatment for pain or other problems between September 1995 and July 1998, when the claimant complained of neck pain following an assault." (*Id*.) Second, the ALJ noted that Plaintiff was "hostile and uncooperative" with medical personnel and did not seek any treatment, despite recommendations for an MRI and a lumbar puncture, until 1998. (*Id*.) Although Plaintiff claims this supports her testimony regarding pain, the ALJ is allowed to discount this evidence because it shows Plaintiff refused treatments that could have supported her allegations of pain. 20 C.F.R. § 404.1529; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994). Third, the ALJ noted that Plaintiff provided inconsistent statements regarding her work activity since 1995. (Tr. 76.) Indeed, the ALJ conclusively stated that "[h]er assertions as to ongoing incapacitating pain continuing since 1995 are, moreover, inconsistent with her documented ability to continue working from December 1998 to August 1999." (*Id*.) As such, the ALJ followed the mandates of 20 C.F.R. § 404.1529 and SSR 96-7 in discounting Plaintiff's credibility.

### G. Conclusion

For the foregoing reasons, this Court finds substantial evidence supports Administrative Law Judge ("ALJ") John Heyer's decision that Plaintiff did not have a severe impairment or combination of impairments on or before her date last insured. Moreover, this Court finds that the ALJ properly followed the mandates of 20 C.F.R. § 404.1529 and SSR 96-7p regarding Plaintiff's credibility. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

### III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service

of the response. E.D. Mich. LR 72.1(d)(3), (4).

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES MAGISTRATE JUDGE

Dated: July 13, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 13, 2011.

        s/Jane Johnson
        Deputy Clerk