UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LA'TANYA T. RHODES,

        Plaintiff,

v.

        Case No. 09-14204
COMMISSIONER OF SOCIAL SECURITY,        Honorable Julian Abele Cook, Jr.

        Defendant.

ORDER

This is a case in which the Plaintiff, La'Tanya Rhodes,[1] in relying upon the authority of 42 U.S.C. § 402(g), has asked this Court to overturn an adverse decision by the Defendant, the Commissioner of the Social Security Administration ("Commissioner"). The parties have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, both of which were forwarded to Magistrate Judge Laurie J. Michelson for her evaluation.[2] In her report on July 13, 2011, she recommended that this Court (1) grant the Commissioner's motion for summary judgment, and (2) deny Rhodes' motion for summary judgment. On August 8th,[3] Rhodes filed an

---

[1] Although Rhodes initiated this lawsuit as a *pro se* Plaintiff, she retained legal counsel on May 26, 2010. However, her attorney subsequently withdrew from the representation, citing a breakdown in their attorney-client relationship due to alleged material misrepresentations by Rhodes.

[2] These motions were initially referred to Magistrate Judge Charles E. Binder, but were subsequently reassigned to Magistrate Judge Laurie Michelson pursuant to Administrative Order 11-AO-020.

[3] This pleading was filed nine days after the statutory and the local rules deadlines to do so had elapsed. 28 U.S.C. § 636(b)(1); E.D. Mich. LR 72.1(d)(3) (response to report and

objection to the report in which she requested "an order for further pleading in the absence of Plaintiff's conclusion regarding final decision for settlement conference."[4] (Pl.'s Obj. at 1). The Commissioner did not file any objections to the report, but did submit a response to Rhodes' objection.

For the reasons that have been set forth below, the Court (1) denies Rhodes' request for additional pleading and an extension of time; and (2) adopts the report and recommendations of Magistrate Judge Michelson in its entirety.

I.

On March 15, 1996, Rhodes filed an application for disability insurance benefits and a

---

recommendation due within fourteen days of service); Fed. R. Civ. P. 6(d) (adding three days after the period would otherwise expire when service is accomplished by mail under Rule 5(b)(2)(C)).

[4]Along with her objection, Rhodes submitted more than one hundred pages of medical records. Many of these documented medical treatment sought by her in June 2011 arising out of a claimed assault. Some of the remaining records pertained to the medical treatment for injuries that she received after being hit by a falling crate of soft drinks in July 2008. The remaining records (covering 1995 and 1996) addressed the treatment sought by her in connection with the incident now before the Court.

Since registering her objection with the Court, Rhodes has filed an additional, unauthorized response to the now-challenged report wherein she again requested "an amended extension in regards [sic] to settlement conference." Along with this response, she submitted other documents, many of which are duplicates of those that had been previously filed by her. She also proffered many other medical records along with her motion for summary judgment. Finally, she has separately submitted a letter from a licensed psychologist who states that she has been treating Rhodes since July 2011.

To the extent that these documents relate to Rhodes' request to overturn the adverse ruling by the Commissioner, none of them will be considered unless they were also made part of the record before the administrative law judge. 42 U.S.C. § 405(g). An examination of the official record indicates that Rhodes has not made any formal request for a remand so that additional evidence may be taken. More importantly, she has not shown that such "new evidence . . . is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* However, to the extent that these documents are relevant to her request for an extension, they will be considered by the Court.

period of disability, alleging a permanent disablement which began on September 12, 1995, citing to a closed head injury. Rhodes states that she was injured at work when a metal object fell on her head, which brought about a closed head injury with an acute scalp contusion. As of the date of the onset of her alleged disability, she was thirty-two years old, possessed a high school education, and had acquired a wide variety of past relevant work experiences (leasing agent, ground support and operations employee, customer service representative, mortgage banker, mail-sorter, residential loan officer, and collections agent). (Tr. 196).

When her application for benefits was initially denied, Rhodes sought and obtained a *de novo* hearing before an administrative law judge[5] who, in rendering a decision on April 8, 2009, determined that she was not under a disability within the meaning of the Social Security Act prior to December 31, 1995, the date on which her insured status expired.[6] He first noted that Rhodes had engaged in gainful activity subsequent to the alleged onset date of her disability. Thereafter, he determined that she did not have a medically determined impairment or any combination of impairments at any time prior to her last insured date that would reasonably be expected to impose significant work-related functional limitations for twelve continuous months. 20 C.F.R. 404.1520(a)(4)(ii). Having found that Rhodes did not have a medically determinable impairment or combination of impairments that was "severe," the administrative law judge completed his analysis at step two of the five-step sequential process. *See* 20 C.F.R. 404.1520(a)(4) ("If we can

---

[5]This was actually the second hearing in this matter. Rhodes also had an earlier hearing on January 23, 2008, which was closed in order to permit Rhodes to secure legal counsel.

[6]Rhodes states that this date was incorrectly calculated because it failed to account for some additional work activity. However, the administrative law judge noted that a generation of a current earnings record and a manual computation of her earnings resulting in no change in her date last insured. (Tr. 74).

find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Thus, it was the conclusion by this administrative law judge that she had not suffered a disability which is compensable under the Social Security Act. Ultimately, this conclusion became the final decision of the Commissioner on August 19, 2009, when the Appeals Council denied her request for a review. This lawsuit followed.

II.

This Court has jurisdiction to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence and (2) the correct legal standards were applied. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), and is "more than a scintilla of evidence but less than a preponderance," *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, even if substantial evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). This review is limited in scope to an examination of the record only. Thus, the court "does not review the evidence *de novo*, make credibility determinations nor weigh the evidence." *Brainard*, 889 F.2d at 681.

III.

The Court will first address Rhodes' request for further pleading and an extension of time. Rhodes asserts that, as a result of being victimized by an assault on June 17th of this year, she is unable to perform at her full capability, which, in turn, supports her request for "an amended extension in regards [sic] to settlement conference." In light of these circumstances, the Court will

4

evaluate this request even though her objection was filed following the expiration of the pertinent filing deadlines. However, the Court cannot discern any grounds upon which to grant this request, inasmuch as no settlement conference has ever been scheduled or conducted. Moreover, the Court has not found any evidence in the official record that suggests that (1) the parties are in, or have ever been engaged in, settlement discussions or (2) additional time would lead them to such discussions. Thus, the Court denies her request for additional pleading and time and, as a result, it will evaluate the report and recommendation by Magistrate Judge Michelson on the basis of the current record.

In her appeal to this Court, Rhodes proclaims that the decision by the administrative law judge was erroneous because the objective medical evidence is consistent with the disabling severity of her subjective physical complaints. Therefore - in Rhodes' opinion - she had a severe medically determined impairment or a combination of impairments that significantly limited her ability to do basic work activities. Specifically, Rhodes asserts that she suffered a closed head injury with an acute scalp contusion, a degenerative dessication of disc material, a cervical disc protrusion, and a possible central cervical disc herniation. Although she submits that her complaints of partial paralysis, severe pain upon prolonged sitting or standing, migraine headaches, chronic dizziness, and nausea are supported by the objective medical evidence, the Commissioner, in disagreeing with her contention, argues that substantial evidence supports the administrative law judge's determination.

Contrary to Rhodes' assertion, the objective medical evidence is inconsistent with her claims of severe, disabling impairments. As noted by the administrative law judge, Rhodes sought emergency treatment following the incident on September 12th, complaining of vomiting and a severe headache. Her motor, sensory, and cranial nerve functions were considered to be normal,

5

as were the results of a general physical examination. Rhodes stated that she had no double vision or any other neurological deficits (such as weakness or numbness). Although an initial CAT scan had detected a "minimal suspicious area," two follow-up CAT scan examinations were described as normal. Despite having received numerous recommendations from her physicians, Rhodes refused to have an MRI or lumbar puncture testing. One week later, she returned to the hospital, complaining of headaches, blurry vision, dizziness, and vomiting. However, she left the hospital prior to the completion of her physical examination. The physician reported that Rhodes was hostile and uncooperative, and had verbally and physically assaulted him. There was no evidence of any further medical treatment or examinations until July 1998, when she sought emergency medical services for the treatment of symptoms related to an assault.

Although Rhodes did sustain a head injury in September 1995, there was no objective medical evidence to support her subjective allegations, and no other disorders were documented prior to the expiration of her insured status on December 31, 1995.[7] As required by SSR 96-7p, and as detailed by Magistrate Judge Michelson in her report, the administrative law judge gave multiple, specific examples of the failure of the objective medical evidence to support Rhodes' claims regarding the existence or severity of her symptoms. SSR 96-7p (credibility finding must be (1) based upon the entire case record, and (2) "sufficiently specific to make clear to the

---

[7]The administrative law judge also carefully analyzed the voluminous medical records relating to assaults that occurred in November 1994, July 1998, and March 2002, and car accidents that occurred in December 1992 and August 1998. However, as noted by Magistrate Judge Michelson, only the medical evidence that preceded the expiration of her insured status or related back to a medical condition prior to that date is relevant. *Price v. Chater*, No. 96-5092, 1996 WL 742206, at *2 (6th Cir. 1996) (unpublished) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of his date last insured." (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990))). As for the pre-expiration evidence related to these other incidents, the administrative law judge correctly concluded that it showed no indication of sequelae of significant degree or duration.

individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (citation and internal quotation marks omitted) ("Since the [administrative law judge] has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference."); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Therefore, substantial evidence in this record supports the determination by the administrative law judge that she did not suffer from any severe impairment, and was not under a disability that is compensable under the Social Security Act.

IV.

For the reasons that have been outlined above, the Court adopts the report of Magistrate Judge Michelson. Accordingly, (1) the Commissioner's motion for summary judgment is granted, and (2) Rhodes' motion for summary judgment is denied.

IT IS SO ORDERED.

Date: September 30, 2011　　　　　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2011

　　　　　　　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　　　　　　　Case Manager